(7 Misc. Rep. 176.)

## HAAS et al. v. GREEN.

(Common Pleas of New York City and County, General Term. February 5, 1894.)

1. EVIDENCE—WEIGHT AND SUFFICIENCY.
   On an issue as to whether goods sold by plaintiff to defendant were damaged at the time of delivery or afterwards, plaintiff gave evidence that the goods, in an undamaged condition, were placed in boxes at plaintiff's place of business, and carried to and delivered at defendant's address without having been opened. *Held* sufficient to sustain a verdict for plaintiff, though defendant testified that the goods remained in her room but two hours after delivery, that she was not out of the room during that time, and that the goods were found to be damaged when the boxes were opened.

2. EVIDENCE—EXPERTS.
   The fact that a witness offered as a chemical expert had abandoned his studies as a chemist, and become a druggist, does not render him incompetent.

Appeal from eleventh district court.

Action by Samuel Haas and others against Mary Green to recover money for goods sold and delivered. There was a judgment in favor of plaintiffs, and defendant appeals. Affirmed.

Argued before BISCHOFF and GIEGERICH, JJ.

Wm. N. Cohen and Benj. Tuska, for appellants.

Edw. J. McGanney, for respondents.

BISCHOFF, J. Plaintiffs sued to recover the sum of $197, the agreed price of sundry garments sold and delivered by them to defendant. Defendant conceded her indebtedness for $115, but disputed plaintiffs' right to recover the remaining $82, the price of a waist and skirt, on the ground that they had been delivered to her in a damaged condition, and that she had tendered a return thereof. The contest on the trial therefore was narrowed down to the inquiry whether the waist and skirt were damaged before delivery thereof to defendant or thereafter. Concerning the subject-matter of this inquiry, 19 witnesses were examined, and the court below determined the issue in plaintiffs' favor upon conflicting testimony. No purpose of general interest can be subserved by a discussion of the evidence in detail. It has, however, received our careful scrutiny, and while it may be that, if we had been called upon to decide in the first place, we would have reached a conclusion at variance with that of the justice below, we are, notwithstanding, unable to say that he erred, since it was his peculiar province, no jury trial having been demanded, to determine the degree of credibility to which the statements of the several wit-

nesses were entitled; and the superior advantage of the trial jus-
tice in this respect, of personally observing the witnesses while un-
der examination, should deter us from substituting our conclusion
for his.

Assuming, as defendant's counsel contends, that the burden of
proving delivery in good order was upon plaintiffs, there was suffi-
cient plausible evidence to discharge it; and with the question of
the credibility of the witnesses determined in plaintiffs' favor, which
we must assume for the purposes of the judgment appealed from,
we are unable to say that the decision of the trial justice adversely
to defendant was against the weight of evidence. All of the wit-
nesses who testified to the condition of the waist and skirt at the
time of, or immediately before, delivery thereof to defendant, and
those who testified to the custody of the garments after delivery,
were interested in the issue of the trial; plaintiffs and defendant
directly so, and the employes of the former, as well as those of the
hotel where defendant resided, indirectly, to avoid the imputation
of carelessness or negligence or worse. Hence the statment of
neither of these witnesses was conclusive. Elwood v. Telegraph
Co., 45 N. Y. 549; Kavanagh v. Wilson, 70 N. Y. 177; Gildersleeve
v. Landon, 73 N. Y. 609; Wohlfahrt v. Beckert, 92 N. Y. 490; Honeg-
ger v. Wettstein, 94 N. Y. 252; Bank v. Diefendorf, 123 N. Y. 191,
25 N. E. 402. That the egregious stains, which disfigured the gar-
ments, and destroyed their utility for wear, were caused by the
malicious act of some unknown person before delivery to defendant.
because it appeared that, two years before, a strike had occurred
among some of the employes of plaintiffs' establishment, and that
one of plaintiffs' business cards was found pinned to the garments,
bearing the words, "Dun for now," in pencil, was conjectural merely,
and not a legitimate inference. Such a conjecture may afford a
possible solution in the absence of accurate explanation. Other
conjectures, however, are equally plausible, and neither should there-
fore take the place of inference which is the inevitable conclusion
reached by a rational mind from facts.

It was shown on plaintiffs' behalf that between 7:30 and 7:45
o'clock in the evening of May 6th the waist and skirt, with the
other garments, were folded and packed in the boxes in which they
were subsequently delivered to defendant, and so carried out of
plaintiffs' establishment to the delivery wagon, in the street in
front thereof, and that at this time the garments were free from
any stains. The employes in charge of the delivery wagon testified
that the boxes remained unopened while in their custody, and that
they were delivered at defendant's address about 8 o'clock. The
employes of the hotel where defendant resided testified to the
receipt of the packages at 7:55 P. M., and to the delivery thereof
in defendant's hands at 8 o'clock, five minutes later, untampered
with by them. The boxes containing the garments were not
stained, and it is inexplicable how the stains could have been made
without opening the boxes, from the fact that the stains appeared
on the exposed side of the garments when in wear, which, how-
ever, in packing, had been folded in with the lining outside. These

facts unquestionably justified the finding that the garments were delivered in good order. Defendant admitted the receipt of the packages at 8 o'clock and asserted that they remained in her room and custody, unopened, until 10 o'clock, when, her maid having returned at that time, she directed the packages to be opened, and for the first time discovered the stains. Defendant further asserted that during the time the packages remained unopened and in her room she was constantly present, and that no one had access to them. This fact, if so, refutes plaintiffs' claim of the delivery of the garments in good order; and with apparently equally reputable witnesses it is difficult to reconcile their statements. It is possible, however, that defendant did leave her room,—a fact which she may have failed to recollect,—and that during the time of her absence the damage to the garments may have been committed by some unknown person with malevolent intent, or perhaps through carelessness; and from the inconclusiveness of the statements of a party in interest we must infer that the court below so found.

No error of sufficient gravity to require reversal of the judgment appears in the rulings of the trial justice. Keyser, a druggist, was examined as an expert witness for plaintiffs, to determine the character of the stains. Defendant's counsel objected to this testimony, on the ground that the competency of the witness had not been shown, and, after cross-examination, moved to strike the testimony out upon the same ground. Sufficient, however, appeared to show that the witness had some familiarity with the subject-matter of his examination, and in such a case the appellate court should not reverse. The competency of an alleged expert witness is a preliminary question of fact to be determined by the trial court, and its determination that the witness is competent will be generally regarded as conclusive, unless there is no evidence whatever, or no sufficient evidence, to support it, or the determination is contrary to the evidence. Slocovich v. Insurance Co., 108 N. Y. 56, 62, 14 N. E. 802. That the witness had abandoned his studies as a chemist, and devoted himself to the occupation of a druggist, vending drugs and toilet articles exclusively, did not render him any less competent. As the court of appeals said in Bearss v. Copley, 10 N. Y. 93, 95: "There was nothing in the change of employment from tanning hides to the study of the law which would necessarily deprive him of the skill acquired in his original trade." See, also, Roberts v. Johnson, 58 N. Y. 613. The trial justice asked the witness, "Do you consider yourself an expert to testify whether a fluid upon a dress or skirt or waist is of carmine or not?" This was certainly error as involving the substitution of the witness' opinion for the fact to be determined by the court, (Rog. Exp. Test. § 17;) but, however that may be, no objection was made to the question. A card was produced, bearing the words legibly in pencil, "Dun for now," and it was contended that other writing was discernible with a microscope. For the purpose of determining this, defendant's counsel requested an adjournment, alleging surprise, which the justice refused. This was no error. The sub-

ject-matter of the proposed inquiry was not one proper for expert testimony, and was determinable by the justice from inspection. The judgment should be affirmed, with costs.